IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **WILLIAM JACK PARKERSON,** | No. 1:15-cv-01695-MO |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| **SEAN FERNS, JODI VAUGHAN, JEANETTE DAVIDSON, PETER YORK, FRANK SKRAH, AND JOSEPH FOREMAN,** | |
| Defendants. | |

**MOSMAN, J.**,

Plaintiff William Jack Parkerson ("Parkerson"), an inmate at the Klamath County Jail, is proceeding *pro se* in this 42 U.S.C. § 1983 civil rights action. He alleges defendants Jeanette Davidson ("Davidson") and Frank Skrah ("Skrah") violated his First Amendment free exercise of religion right by suspending his kosher meals. The parties filed cross-motions for summary judgment on Parkerson's claim. On the same day he filed his motion for summary judgment, Parkerson filed a Supplement to Amended Complaint that the Court construed as a proposed amended complaint following Parkerson's oral motion to amend his pleading. Approximately two months after the deadline for filing a reply in support of his Motion for Summary Judgment, Parkerson filed a Letter to the Court that the Court construed as a Motion for Extension of Time to File a Reply. After careful consideration of the parties' briefing and exhibits, I DENY Parkerson's oral motion to file an amended complaint (41), DENY

1 –OPINION AND ORDER

Parkerson's Motion for Extension of Time to file a Reply, DENY Parkerson's Motion for Summary Judgment (38), and GRANT Davidson's and Skrah's Motion for Summary Judgment (25).

## I. BACKGROUND

### A. Procedural Background

Parkerson initially filed a civil rights Complaint on September 8, 2015. The Court dismissed all of his claims, advised him of a variety of deficiencies in his Complaint, and granted him leave to amend. On December 2, 2015, Parkerson filed a motion to amend and, five days later, filed an Amended Complaint. The Court granted Parkerson's Motion to file an Amended Complaint but with the exception of his First Amendment free exercise claim in Claim II, dismissed all claims and defendants. The Court, however, gave Parkerson leave to amend his retaliation claim and advised him he could file "a second amended complaint limited only to Claims Two and Eight, and limited only to Defendants Skrah and Davidson." (Order to Dismiss at 6).

On April 19, 2016, Skrah and Davidson filed a Motion for Summary Judgment. The next day, the Court issued a Summary Judgment Advice and Scheduling Order that explained Defendants' Summary Judgment Motion could end Parkerson's case and what he needed to do to oppose the motion. Approximately one month later, Parkerson filed a Supplement to Amended Complaint, captioned "Retaliation Claim" as well as his own Motion for Summary Judgment. The Court held a telephonic Rule 16 conference on June 13, 2016. Parkerson made an oral motion to file a second amended complaint, and the Court construed the Supplement to Amended Complaint as a proposed second amended complaint. Shortly after the Rule 16 conference, Davidson and Skrah filed an opposition to Parkerson's oral motion to amend.

Defendants filed a joint Response to Plaintiff's Motion for Summary Judgment and Reply to Response to Defendants' Motion for Summary Judgment on July 28, 2016. Approximately a month

later, on August 23, 2016, the Court issued a scheduling order directing that any reply to Defendants' Response to Plaintiff's Motion for Summary Judgment was due by September 6, 2016. On November 2, 2016, Parkerson filed a Letter to the Court noting that he had filed a Response in Opposition to Defendants' Motion for Summary Judgment and seeking an extension of time to file a reply to Defendants' Response to Plaintiff's Motion for Summary Judgment. (Motion for Extension of Time/Letter, dkt. no. 53).

### B. Factual Background of Parkerson's Free Exercise Claim

Claim II of Parkerson's Amended Complaint alleges he practices Judaism and receives kosher meals. He claims Davidson suspended his kosher meals for thirty days because of an allegation Parkerson ate non-kosher food. Parkerson contends Davidson again suspended his kosher meals, this time for sixty days, after a second allegation he ate non-kosher food. Parkerson claims Skrah was responsible for the suspension of his kosher diet because, as the Klamath County Sheriff, Skrah "oversees operations here at the jail and enforces the self-imposed unconstitutional administration rules." (Amended Complaint, Claim II, dkt. no. 7).

The undisputed facts are as follows. The times before this lawsuit that he was booked into the Klamath County Jail, Parkerson self-identified his religious beliefs as "Christian." During the incarceration at issue in this action, however, Parkerson requested a kosher meal accommodation. To substantiate his request, jail staff contacted the chaplain at Two Rivers Correctional Institute who confirmed Parkerson received kosher meals while at Two Rivers but had requested to be taken off the kosher diet in November 2013. On October 21, 2014, without any further inquiry, Davidson approved Parkerson's kosher meal request. When she approved the request, Davidson gave Parkerson a written warning telling him he was expected to adhere to a kosher diet and cautioning him that failing to adhere

3 –OPINION AND ORDER

to a kosher diet could result in suspension of his kosher-meal accommodation. Davidson also gave Parkerson a list of items at the commissary that were not kosher.

On December 10, 2014, after a Sheriff's Deputy observed Parkerson eating non-kosher food, Davidson gave Parkerson a written reminder about the terms of the kosher meal accommodation and advised him that continued lapses would result in a thirty-day suspension of the accommodation. By December 31, 2014, Parkerson had ordered sixty-two non-kosher food items from the commissary. Deputies had again seen him eating non-kosher food, and Parkerson admitted he had violated his kosher diet. Accordingly, Davidson suspended Parkerson's kosher diet accommodation for thirty days beginning January 1, 2015. Parkerson did not grieve the January 2015 suspension of his kosher meals within thirty days of the suspension.

Between January 1, 2015 and April 30, 2015, Parkerson ordered another 167 non-kosher food items from the commissary. Deputies also saw Parkerson eating sausage gravy, a non-kosher food, from another inmate's tray. Because Parkerson continued to violate his kosher diet, Davison suspended his kosher-meal accommodation for sixty days beginning April 30, 2015. Parkerson did not grieve the April 2015 suspension of his kosher meals within thirty days of the suspension.

## II.     LEGAL STANDARDS

After an initial period for amendments as a matter of right, pleadings may be amended only with the opposing party's consent or by leave of the court. Fed. R. Civ. P. 15(a). Generally, "the court should freely give leave [to amend the pleadings] when justice so requires," Fed. R. Civ. P. 15(a)(2). A court considers five factors when determining whether to grant leave to amend under Rule 15: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the pleadings have previously been amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). A court need not apply all five factors in each case, *id.*, and not all factors merit equal weight.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Futility of amendment by itself can justify denying a motion for leave to amend.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

At summary judgment, the moving party bears the initial burden of pointing out the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  This burden is met by showing an absence of evidence to support the non-movant's case.  *Id.*  In order to defeat summary judgment, the non-moving party must then set forth "'specific facts showing that there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original).  The court views the record in the light most favorable to the non-moving party.  *Id.*  This is especially true when the non-movant is a *pro se* litigant.  *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) (stating *pro se* pleadings are liberally construed, particularly where civil rights claims are involved).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587.

### III.  DISCUSSION

#### A.  Parkerson's Oral Motion to Amend his Complaint

Parkerson's proposed amended complaint alleges a retaliation claim against Davidson and Skrah as well as defendants Woody, Lugo, Billy Stripling, Rose Morehouse, and Chuck Collins.  (Supplement to Amended Complaint at 17, dkt. no. 37).  Parkerson alleges the proposed defendants retaliated against him because he filed this civil rights lawsuit and (apparently) because another inmate "told Deputy Tolley that plaintiff was going to slap her" by singling him out for petty rule violations, keeping him in administrative segregation, and punishing him with excessive sanctions.  (*Id.* at 3, 11).  Parkerson also, however, states in his proposed amended complaint that jail staff disciplined him after he violated jail rules and that he chose to remain in administrative segregation instead of being moved to the "AA unit"

where he "had been having issues." (*Id.* at 6-7). For example, Parkerson claims, "Deputy Rose Morehouse wrote me up for having a piece of paper over my vent. First, she said she wasn't going to write me up . . . . Then she changed her mind and was going to write me up for a <u>minor</u> rule violation. When she wrote me up . . . [it was for] a <u>MAJOR</u> rule violation." (*Id.* at 7 (emphasis and capitalization in original)). After a disciplinary hearing on his write-up for blocking his vent, Parkerson received a sanction of thirty days in administrative segregation.

Parkerson's proposed amended complaint fails to state a cognizable claim for relief because the conduct he complains of advanced "legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) ("A prisoner suing prison officials under [§] 1983 for retaliation must allege that he [or she] was retaliated against for exercising his [or her] constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."). Simply put, placement in more restrictive housing or other punishment as a disciplinary sanction serves a "legitimate penological goal" and is not a constitutional violation. *Id.* Because he does not allege a congnizable constitutional violation, allowing Parkerson to amend his pleadings to add his retaliation claim would be futile. *Bonin*, 59 F.3d at 845.

Although futility of amendment alone is a sufficient basis to deny a motion to amend, three of the remaining four factors a court considers a motion to amend also weigh against granting Parkerson's oral motion. *Allen*, 911 F.2d at 373. First, Parkerson's previous amendment of his Complaint on December 21, 2015, weighs against granting his current motion to amend. *Id.* (stating one of the factors a court considers in allowing leave to amend is whether the pleading have previously been amended). Next, Parkerson's undue delay in moving to amend supports denying his oral motion. *Id.* (listing undue delay in a factor a court weighs in considering whether allowing leave to amend). Specifically, although

the Court advised him on December 21, 2015 that he could "file a second amended complaint limited only to Claims Two and Eight, and limited only to Defendants Skrah and Davidson," Parkerson waited approximately five months before filing his proposed amended complaint on May 18, 2016. (Order to Dismiss at 6). This constitutes undue delay, especially because most of the retaliatory acts alleged in the proposed amended complaint occurred between December 2015 and March 2016. (Supplement to Amended Complaint at 3, 5-8). Finally, Parkerson filed his proposed amended complaint after the close of discovery and nearly two months after Defendants filed their summary judgment motion. Allowing Parkerson leave to amend would prejudice Defendants by requiring them to expend resources on additional discovery, including re-opening Parkerson's deposition, as well as on re-drafting their Summary Judgment motion. *Allen*, 911 F.2d at 373 (stating prejudice to the opposing party is a factor for a court to consider in whether to grant leave to amend).

Because four of the five factors a court considers when determining whether to grant leave to amend weigh against allowing amendment, I deny Parkerson's oral motion to amend.

### B. Parkerson's Request for an Extension of Time to File a Reply in Support of His Motion for Summary Judgment

Parkerson requested an extension of time to file a reply supporting his Motion for Summary Judgment. I deny the motion for an extension for two reasons. First, Parkerson did not request an extension of time until nearly two months after the deadline to file a reply. *See, e.g., Ahanchain v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (noting requests for extensions of time made *before* the applicable deadline has passed should normally be granted). Next, even if I granted Parkerson's motion, any reply he filed would not alter my conclusion that his First Amendment claim is barred for failure to exhaust his administrative remedies. As discussed more fully below, Parkerson's own statements establish he failed to exhaust his First Amendment claim before filing this case.

///

7 –OPINION AND ORDER

### C.  The Parties' Cross-Motions for Summary Judgment

#### 1.  *Exhaustion Requirements under the Prison Litigation Reform Act*

In their motion for summary judgment, Davidson and Skrah contend the Court must grant summary judgment on Parkerson's claim because they have carried their burden of producing evidence that Parkerson did not exhaust his claims as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1997e(a). *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (stating "'failure to exhaust under the PLRA is an affirmative defense the defendant must plead and prove'"). The PLRA requires that an inmate exhaust all available administrative remedies before filing a civil rights action with respect to prison conditions in federal court "even when the relief sought —monetary damages — cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."), *superseded by statute as stated in Booth v. Churner*, 532 U.S. 731 (2001).

The Klamath County Jail has an inmate grievance policy for inmates wishing to grieve the conditions of their confinement. (Decl. of Jeanette Davidson in Supp. of Defs.' Mot. for Summ. J. ("Davidson Decl.") at ¶ 12, ex. 3, dkt. nos. 26 and 26-1). The jail's policy requires inmates to file a grievance within 30 days of the act or failure to act being grieved. (Davidson Decl., ex. 3, dkt. no. 26-1). The grievances process requires prisoners to first attempt to remedy the situation on the lowest level. (*Id.*). The corrections deputy or staff member receiving the first-level grievance must attempt to resolve the grievance and supply the inmate with sufficient writing materials to file a formal grievance. (*Id.*). If dissatisfied with the first-level grievance response, the prisoner can complete a written grievance, in any form, to the Sergeant. (*Id.*). The Sergeant must give the inmate a written response stating the decision made, the reason for the decision, advise the inmate of the right to appeal the decision to the Jail Commander, and advise the inmate of the grievance process. In order for the grievance to be exhausted,

the inmate must appeal the Sergeant's decision by making a written request for review to the Jail Commander. Parkerson contends he is familiar with the jail's grievance procedure and exhaustion requirements. (Mem. in Supp. of Religious Liberties Claim, at 1-2, dkt. no. 11).

Here, the undisputed facts viewed in a light most favorable to Parkerson establish that he failed to exhaust his administrative remedies for the January 2015 and April 2015 suspensions of his kosher diet accommodation. Davidson and Skrah have produced admissible evidence in the declaration of Klamath County Jail Commander Jeanette Davidson showing Parkerson did not exhaust his administrative remedies for his free exercise claim. Specifically, Lieutenant Davidson's declaration states Parkerson did not appeal either the January 2015 suspension of his kosher diet or the April 2015 suspension of his Kosher diet. (Davidson Decl. at ¶ 13, dkt. no. 26).

Moreover, Parkerson's own assertions establish he did not exhaust his administrative remedies before bringing his free exercise claim in federal court. For example, Parkerson contends he "sent kites to Sergeant Lugo on two occasions requesting to resolve [his] diet issue and then requesting [sic] a grievance." (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 14). He also states he "produced evidence of duplicate kites [he] sent to Sergeant Chuck Collins, attempting to resolve adverse action taken by administration and then requesting a grievance." (*Id.*; Pl.'s Mot. for Summ. J., exs. 1-2, dkt. 38-1).

Neither the kites to Sergeant Lugo nor the kites to Sergeant Collins were filed within 30 days of the suspensions of Parkerson's kosher diet as required by the jail's grievance policy. Parkerson asserts he sent the kites to Sergeant Lugo on August 13 and August 20, 2015. (Mem. in Supp. of Religious Liberties Claim, dkt. no. 11). This is 224 days after the first suspension began and 106 days after the start of the second suspension. Even assuming jail staff failed to properly respond to Parkerson's August grievances as Parkerson claims, this does not alleviate the PLRA's requirement that Parkerson "properly" exhaust his administrative remedies, i.e., file a grievance within thirty days of the date the

complained-of conduct occurred. *Woodford*, 548 U.S. at 88, 93-94 (construing section 1997e(a) to require "proper exhaustion" and noting a "prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction.")  Similarly, even assuming that the kites to Sergeant Collins on March 12, 2016 and March 19, 2016 addressed the kosher diet suspension, these grievances were filed well after the thirty-day deadline to grieve the suspensions and months after Parkerson filed this lawsuit. *McKinney v. Carey*, 311 F.3d 1198, 1200-1201 (9th Cir. 2002) (per curiam) (holding that prisoners must exhaust their administrative remedies prior to filing suit, not during the pendency of the suit).

Because the undisputed facts establish Parkerson failed to exhaust his administrative remedies regarding the January 2015 and April 2015 suspensions of his kosher-diet accommodation, Davidson and Skrah are entitled to summary judgment on Parkerson's free exercise claims.

### IV.  CONCLUSION

For the reasons explained above, I DENY Parkerson's oral motion to file an amended complaint. I deny Parkerson's Motion for Extension of Time/Letter (53).  I DENY Parkerson's Motion for Summary Judgment (38) and GRANT Davidson's and Skrah's Motion for Summary Judgment (25). Parkerson's First Amendment free exercise claims are dismissed with prejudice.

DATED this <u>10</u> day of November, 2016.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge